```
Case 2:00-cv-00452-HDM-VPC   Document 1-761508   Filed 04/10/00   Page 1 of 17
```

Dr. Henry C. Ayoub, DCH
1537 Tonada Way
Las Vegas, NV 89117
(702) 233-4200
*Plaintiff in Proper Person*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CV-S-00-0452-HDM-LRL

DR. HENRY C. AYOUB, DCH, an individual, )
　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　 )
vs.　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　 )
COMMUNITY COLLEGE OF SOUTHERN　　　　 )
NEVADA, a governmental agency of the State )   **COMPLAINT**
of Nevada; BOARD OF REGENTS, 　　　　　 )
COMMUNITY COLLEGE OF SOUTHERN　　　　 )
NEVADA, a governing body for Southern 　 )
Nevada Community College; and UNIVERSITY )
AND COMMUNITY COLLEGE SYSTEM OF )
NEVADA, an agency of the State of Nevada, )
　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　Defendants. )
_____)

　　　　DR. HENRY C. AYOUB, as a Plaintiff in Proper Person, hereby pleads and alleges for his Complaint against the above-named Defendants as follows:

### A. Jurisdiction, Parties and Venue

　　　　1.　　　Plaintiff invokes the jurisdiction of this Court on the grounds that this Complaint falls within the subject-matter jurisdiction of United States District courts by involving questions of federal law, specifically under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., under ERISA, 29 U.S.C. § 1140 et seq. and under the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. Jurisdiction is therefore proper under 28 U.S.C. §§ 451, 1331, 1337 and 1345.

　　　　2.　　　This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 1277(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(A). The employment practices

1

hereinafter alleged to be unlawful were committed in the County of Clark, State of Nevada, within the District of Nevada.

3. This Court also holds jurisdiction over Plaintiff's claims existing pursuant to the laws of the State of Nevada under the doctrine of Supplemental Jurisdiction, wherein ancillary state claims may be heard in Federal courts when they arise from the same common nucleus of operative facts.

4. Plaintiff is and was at all times connected to this Complaint a resident of the County of Clark, State of Nevada.

5. Defendant COMMUNITY COLLEGE OF SOUTHERN NEVADA ("CCSN") is and was at all times connected to this Complaint a public entity, operated by the State of Nevada as a post-secondary educational institution.

6. Defendant BOARD OF REGENTS, COMMUNITY COLLEGE OF SOUTHERN NEVADA, is and was at all times connected to this Complaint public entity of the State of Nevada, with responsibility for the policies and practices of Defendant CCSN.

7. Defendant UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA is and was at all times connected to this Complaint a public entity of the State of Nevada, found within the venue of this Court by virtue of its ownership and operation of several institutions of post-secondary education in the County of Clark, State of Nevada, including Defendant CCSN.

8. Venue in this District is proper because a Defendant herein can be found within this district, as shown in the allegations of parties herein.

9. At all relevant times, Defendant CCSN has been a covered entity under Section 101(2) of the ADA, 42, U.S.C. § 12111.

10. Defendants collectively constitute an "employer" as defined in the ADEA, in 29 U.S.C. § 623. Pursuant to 29 U.S.C. § 626 and with respect to age discrimination which Defendants have practiced against the Plaintiff, Plaintiff seeks to recover damages for loss of earnings, liquidated damages, reinstatement, costs of suit and any attorneys fees which Plaintiff may hereafter incur.

## B. Surrounding Facts and Circumstances

11. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full.

12. Plaintiff was born on September 9, 1942.

13. From approximately mid-1979 to approximately February of 1995, Plaintiff was employed as a tenured professor with CCSN. From July 1, 1995 until the end of his employment with Defendants, Plaintiff was employed as a counselor with CCSN.

14. Plaintiff has at all times material hereto been qualified for his employment by Defendant CCSN, and there properly performed his employment duties.

15. In 1987 and while on a sabbatical doing research related to his employment, Plaintiff suffered spinal injuries in an automobile-related accident. On November 5, 1990 and while engaged within the course and scope of his employment with Defendant CCSN, Plaintiff was involved in an automobile collision, which exacerbated the original injury and resulted in his permanent and partial disability.

16. From the 1990 accident to the present, Plaintiff has required chiropractic care to manage pain from his disability.

17. On or about December 1993, Plaintiff informed Defendant CCSN of his disability and requested reasonable accommodations for the same pursuant to the ADA. These reasonable accommodations included but were not limited to a reduced-hour workweek, a flexible work schedule, limitations on the weights he would be required to lift in the course of discharging his duties, a hands-free telephone and ergonomically correct office furniture.

18. Defendant CCSN failed to respond to Plaintiff's request for reasonable accommodations pursuant to the ADA, and discriminated against him because of his disability by refusing to credit, towards Plaintiff's advancement on his salary schedule, certain University of Nevada courses Plaintiff had attended to further his professional qualifications.

19. On or about February 14, 1994, Plaintiff filed a confidential grievance statement regarding the above-described discrimination with Thomas Brown, ADA Coordinator for the Nevada Department of Business and Industry.

3

20. Plaintiff suffered an exacerbation of his work-related injuries in an automobile accident in approximately January of 1995.

21. Plaintiff on April 1, 1999, requested a re-opening of his EICN claims because his injuries had been exacerbated by the 1994 automobile accident.

22. As indicated in the facts above, Defendant CCSN received actual notice of Plaintiff's injuries.

23. As indicated in the facts above, Defendant CCSN received actual notice of Plaintiff's permanent partial disability.

24. In approximately December of 1994, certain employees, officials and/or representatives of Defendant CCSN represented to Defendant that a new teaching facility was to be built at the CCSN Henderson, Nevada campus, for the express purpose of supporting and expanding Plaintiff's teaching program.

25. Defendant CCSN failed and refused to make reasonable accommodations for Plaintiff's disability and Plaintiff therefore pursued a complaint against CCSN with the State of Nevada, Department of Employment, Training and Rehabilitation, Equal Rights Commission.

26. By March of 1996, Defendant CCSN had offered a pretext transfer to the CCSN Sahara campus, a location which had no enrollment in Plaintiff's teaching specialty and no facilities appropriate to support Plaintiff's teaching specialty.

27. Plaintiff knew that Defendant CCSN had previously used such types of transfers to arrange a situation wherein a lack of enrollment at the professor's new location would be used to justify a later elimination of that professor's position. Such an arrangement, upon information and belief, was and is the only way Defendant CCSN could defeat the tenure system and effectively "fire" a tenured professor.

28. Plaintiff declined to place his employment in jeopardy and declined the pretext offer of a transfer.

29. By March of 1996, Defendant CCSN, through its employees, officials, agents and/or representatives, had pressured Plaintiff to either take a medical retirement or to resign. When Plaintiff declined to either take a medical retirement or to resign, Defendant CCSN,

4

through its employees, official, agents and/or representatives, began speaking about unilaterally terminating Plaintiff's employment.

30. Because of Plaintiff's disability and its inability or refusal to make reasonable accommodations for Plaintiff's disability, Defendant CCSN re-assigned Plaintiff from his position as a tenured professor to a position as a counselor, pursuant to a negotiated settlement agreement which Plaintiff executed under duress on February 8, 1996 and which CCSN employee, official and/or agent Richard Moore executed on March 15, 1996.

31. Pursuant to all agreements and understandings of the parties, Plaintiff was to retain his tenured status despite the change in the nature of his duties with Defendant CCSN.

32. Defendant CCSN failed to fully honor the negotiated settlement agreement.

33. Defendant CCSN failed and refused to even provide an office and a computer for Plaintiff to perform the duties of his new employment position.

34. In 1998, Plaintiff again requested reasonable accommodations to enable him to continue functioning in his new employment position despite his disability. These reasonable accommodations included a specially-designed chair which would enable him to sit for longer periods despite the continual pain and discomfort associated with his spinal injuries.

35. In the fall of 1998, Plaintiff would have been fully able to perform all of his employment duties if given the appropriate reasonable accommodations by Defendant CCSN, as was required by the ADA.

36. Defendant CCSN failed and refused to honor Plaintiff's requests for reasonable accommodations for his disability, despite CCSN's actual notice of Plaintiff's disability, which prevented him from remaining in a sitting position in an ordinary chair for more than a few hours. However, Plaintiff remained able to perform all required employment duties when he was able to remain seated.

37. Throughout the times relevant to this Complaint, Defendant CCSN has violated various federal statutes and rules of contract performance by its failure to make reasonable accommodations in Plaintiff's work schedule, failure to make reasonable accommodations in Plaintiff's physical environment (including but not limited to providing office furnishings which

5

would enhance Plaintiff's ability to remain on the job without experiencing debilitating pain), refusal to provide office space, refusal to provide computer equipment, consistent obstruction of Plaintiff's professional development, harassing him for making use of his accrued sick leave, engaging in retaliatory conduct for Plaintiff's pursuit of grievances, failing to honor their negotiated settlement agreement related to Plaintiff's discrimination grievance

38. Over the summer break of 1999, Plaintiff was on unpaid summer break leave and was cut off from normal routes of communication with Defendant CCSN.

39. In September of 1999, Plaintiff informed Defendant CCSN that his physical condition allowed him to work a schedule of only half-days. Defendant initially agreed to this accommodation for his disability.

40. In September 1999, Plaintiff again asked Defendant CCSN for reasonable accommodations for his disability, including an ergonomically correct chair, an office and a hands-free telephone.

41. Defendants never responded to Plaintiff's communications for approximately five months, contrary to internal policy and procedure.

42. Before the date of Plaintiff's last request for reasonable accommodations for his disability, at least one other professor employed by Defendant CCSN was, upon information and belief, allowed to work a half-days schedule while retaining full pay.

43. At a meeting on CCSN property on September 28, 1999, Plaintiff requested a 12-month leave to allow his body to fully heal. Defendant CCSN advised Plaintiff to take an extended sick leave pursuant to the Federal Family Medical Leave Act, but Plaintiff declined to follow that suggestion, preferring to assert his rights as enumerated in his employment contract with CCSN and as outlined in the CCSN policies and procedures.

44. Following the September 28, 1999, meeting, Defendant CCSN unilaterally "placed" Plaintiff on extended sick leave pursuant to the Federal Family Medical Leave act, even though Plaintiff had never submitted the required application for such leave, and in violation of applicable federal law and CCSN internal policies and procedures.

45. Defendant CCSN at some presently unknown time in 1999 began to incorrectly

6

charge certain portions of Plaintiff's leave time against his accrued sick leave account, depleting the number of days which Plaintiff had available for medical days off required by his disability.

46. Following the September 28, 1999 meeting, attorney Glenda White, in connection with the Nevada Faculty Alliance, tried to represent Plaintiff in his dispute with CCSN. Defendant CCSN, however, frustrated White's efforts by failing to fully respond to her requests for critical documentation and by failing to follow internal procedures as required Board of Regents and as required by Plaintiff's employment contract.

47. Plaintiff was constructively discharged from Defendant CCSN on March 2, 2000 (See Fourth Claim below) because of CCSN's repeated and persistent failures to make reasonable accommodations for his disability, CCSN's repeated harassment of Plaintiff for using his accrued sick leave and the intolerable working conditions he was forced to endure.

48. Following Plaintiff's constructive discharge, Defendant CCSN failed and refused to pay Plaintiff for his accrued and unused sick leave, claiming that Plaintiff had used all of his accrued sick leave.

49. Following Plaintiff's constructive discharge, Defendant CCSN continued to fail and refuse to provide any documentation to Plaintiff which would account for how it calculated its claim that Plaintiff had used all of his accrued sick leave.

50. Plaintiff has pursued his administrative remedies for his work-related injuries and disability with EICN and exhausted them on March 9, 2000, when deputy Nevada Attorney for Injured Workers Peter L. Busher, Esq., mailed Plaintiff a copy of the EICN Appeals Officer's Decision and Order dated March 8, 2000.

51. Plaintiff has pursued his administrative remedies for disability and age discrimination under NRS 613.330 and exhausted them.

52. Defendants BOARD OF REGENTS, COMMUNITY COLLEGE OF SOUTHERN NEVADA and UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA are responsible for the actions of Defendant CCSN by virtue of their supervisory authority over said Defendant and the doctrine of Respondeat Superior.

7

## STATEMENT OF CLAIMS

## FIRST CLAIM, EMPLOYMENT DISCRIMINATION UNDER THE ADA

53. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

54. More than 30 days before the institution of this lawsuit, Plaintiff pursued appropriate administrative remedies, with the State of Nevada, Department of Employment, Training and Rehabilitation's Equal Rights Commission, for Defendants' violations of the ADA. All conditions precedent to the institution of this lawsuit have been fulfilled.

55. Since at least December of 1993, Defendant CCSN has engaged in unlawful employment practices in violation of the ADA Sections 102(a), 102(b)(1) and 102(b)(5)(B) with respect to Plaintiff's employment first as a tenured professor, then as a counselor. These include but are not limited to failure to make reasonable accommodations in Plaintiff's work schedule, failure to make reasonable accommodations in Plaintiff's physical environment (including but not limited to providing office furnishings which would enhance Plaintiff's ability to remain on the job without experiencing debilitating pain), refusal to provide office space, refusal to provide computer equipment, consistent obstruction of Plaintiff's professional development, harassing him for making use of his accrued sick leave, engaging in retaliatory conduct for Plaintiff's pursuit of grievances, failing to honor their negotiated settlement agreement related to Plaintiff's earlier discrimination grievance and ultimately, constructive discharge of Plaintiff.

56. Plaintiff was at all times and still is a qualified person with a disability pursuant to the ADA, by reason of spinal injuries which limit his ability to remain seated for long periods of time, which limit his ability to lift objects, and which limit his range of motion. Plaintiff was at all times able to fulfil the essential functions of his position for short periods of time, but needed reasonable accommodations to manage pain and prevent "flare-ups" of pain following his work periods which would then prevent him from working on the following day. Reasonable accommodations for Plaintiff's disability would have enabled him to fulfil the essential functions of his position for longer periods of time each day, without leaving him with severe debilitating pain on the following day.

8

57.     The effect of the practices complained of above has been to deprive Plaintiff of his equal employment opportunities and otherwise adversely affect his status as an employee with a disability.

58.     The unlawful employment practices complained of above were and are intentional.

59.     As a direct and proximate result of Defendants' wrongful actions as described above, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A.      Order Defendants to make Plaintiff whole by providing him with appropriate lost earnings and the cash value of employee benefits of which he has been deprived since his departure from employment, with pre-judgment interest.

B.      Order Defendants to eradicate the effects of their unlawful employment practices, including but not limited to reinstating Plaintiff to the position which he previously held as a professor and restoring to him all of the privileges and benefits of his employment.

C.      Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

D.      Order Defendants to make Plaintiff whole by providing compensation for his other pecuniary losses, including but not limited to cost incurred for health and life insurance premiums, and costs of seeking new employment, in amounts to be proven at trial hereof.

E.      Order such other and further relief as the Court deems just and proper.

## SECOND CLAIM, AGE DISCRIMINATION UNDER THE ADEA

39.     Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

40.     The Plaintiff learned, after his termination, that Defendant CCSN had filled the position he formerly held with a person of a younger age.

41.     The conduct of Defendant CCSN, by and through its officials, employees, servants and/or agents, constitutes a willful violation of 29 U.S.C. § 623(a), inasmuch as the employment decisions of Defendant CCSN concerning Plaintiff were based, in whole or in part, upon Plaintiff's age.

42. On April 10, 2000, the Plaintiff complied with 29 U.S.C. § 626(d) by filing a charge of age discrimination with the Nevada Equal Employment Opportunity Commission.

43. As a direct and proximate result of Defendants' wrongful actions as described above, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A. Order Defendants to make Plaintiff whole by providing him with appropriate lost earnings and the cash value of employee benefits of which he has been deprived since his departure from employment, with pre-judgment interest.

B. Order Defendants to eradicate the effects of their unlawful employment practices, including but not limited to reinstating Plaintiff to the position which he previously held as a professor and restore to him all of the privileges and benefits of his employment.

C. Award liquidated damages to the Plaintiff on account of the Defendants' willful violations of 29 U.S.C. § 623(a).

D. Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

E. Order Defendants to make Plaintiff whole by providing compensation for his other pecuniary losses, including but not limited to cost incurred for health and life insurance premiums, and costs of seeking new employment, in amounts to be proven at trial hereof.

F. Order such other and further relief as the Court deems just and proper.

### THIRD CLAIM, PETITION FOR JUDICIAL REVIEW UNDER NRS 613.420

**(Disability Discrimination Claim)**

65. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

66. Plaintiff hereby applies to this Court for an order granting or restoring to him the rights to which he is entitled under of NRS 613.310 to 613.435, inclusive, pursuant to NRS 613.420 and this Court's Supplemental Jurisdiction as set forth above.

**(Age Discrimination Claim)**

67. Plaintiff hereby applies to this Court for an order granting or restoring to him the

1  rights to which he is entitled under of NRS 613.310 to 613.435, inclusive, pursuant to NRS
2  613.420 and this Court's supplemental jurisdiction as set forth above.
3  WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court hear this matter as allowed
4  pursuant to the Nevada Revised Statutes and pursuant to this Court's supplemental jurisdiction
5  under the Federal Rules of Civil Procedure.

### FOURTH CLAIM, CONSTRUCTIVE DISCHARGE

68. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

69. The actions of Defendants and conditions under which Plaintiff was forced to work were violative of Nevada's strong public policy in favor of protecting and providing for injured workers.

70. A reasonable person in the Plaintiff's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions.

71. Defendants had actual or constructive knowledge of the intolerable actions and conditions and their impact on the Plaintiff.

72. The intolerable aspects of Plaintiff's employment situation could have been remedied by Defendants.

73. Plaintiff did leave his employment because of the conditions described herein.

74. As a direct and proximate result of Defendants' actions which forced Plaintiff to leave his employment, Plaintiff has suffered damages in amount to be proven at time of trial hereof.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A. Order Defendants to make Plaintiff whole by providing him with appropriate lost earnings and the cash value of employee benefits of which he has been deprived since his departure from employment, with pre-judgment interest.

B. Order Defendants to eradicate the effects of their unlawful employment practices, including but not limited to reinstating Plaintiff to the position which he previously held as a professor and restoring to him all of the privileges and benefits of his employment.

C.  Order Defendants to make Plaintiff whole by providing compensation for his other pecuniary losses, including but not limited to cost incurred for health and life insurance premiums, and costs of seeking new employment, in amounts to be proven at trial hereof.

D.  Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

E.  Order such other and further relief as this Court may deem just and proper.

### FIFTH CLAIM, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

57. At all times relevant hereto, Defendants were bound by the common law and their duty to exercise due care in their relations with Plaintiff.

58. Defendants breached their duties owed to Plaintiff and caused Plaintiff severe emotional distress by consistently obstructing his professional development, harassing him for making use of his accrued sick leave, repeatedly refusing to make reasonable accommodations for his disability, engaging in retaliatory conduct for Plaintiff's pursuit of grievances and failing to honor their negotiated settlement agreement related to Plaintiff's earlier discrimination grievance.

59. Defendants' conduct was extreme and outrageous, and carried a substantial likelihood of causing Plaintiff severe emotional distress.

60. As a direct and proximate cause of Defendants' actions and failure to fulfill their duties as set forth above, Plaintiff has suffered mental anguish, anxiety, and severe emotional and physical distress.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A.  Order Defendants to pay damages to Plaintiff, in an amount to be proven at trial of this Claim.

B.  Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

C.  Order such other and further relief as this Court may deem just and proper.

## SIXTH CLAIM, CONVERSION RE: ACCRUED SICK LEAVE FUNDS

61. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

62. Plaintiff's accrued sick leave represented a protectable property interest with a value that could be reduced to a medium of exchange such as a monetary sum.

63. By refusing to recognize Plaintiff's leave of absence and wrongfully applying his accrued sick leave to those periods, Defendants exercised and are exercising dominion and control over the property of another, to wit, Plaintiff, in a manner that is inconsistent with the rights of Plaintiff, and therefore constitutes conversion of the accrued sick leave under Nevada law.

64. As a direct and proximate result of Defendant's conversion of Plaintiff's accrued sick leave, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A. Order Defendants to pay damages to Plaintiff, in an amount to be proven at trial of this Claim.

B. Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

C. Order such other and further relief as this Court may deem just and proper.

## SEVENTH CLAIM, VIOLATION OF ERISA

63. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

64. Defendants violated § 510 of ERISA, 29 U.S.C. § 1140, in that one of the determining factors of Defendants' decision to discharge Plaintiff was to prevent the vesting of his pension rights with Defendants and to deny him continued provision of full medical coverage throughout his disability.

65. As a direct and proximate result of Defendants' wrongful actions as described above, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

A. Order Defendants to make Plaintiff whole by providing him with appropriate lost

1  earnings and the cash value of employee benefits of which he has been deprived since his
2  departure from employment, with pre-judgment interest.

3      B.    Order Defendants to eradicate the effects of their unlawful employment practices,
4  including but not limited to reinstating Plaintiff to the position which he previously held as a
5  professor and restoring to him all of the privileges and benefits of his employment.

6      C.    Order Defendants to make Plaintiff whole by providing compensation for his other
7  pecuniary losses, including but not limited to cost incurred for health and life insurance premiums,
8  and costs of seeking new employment, in amounts to be proven at trial hereof.

9      D.    Order that the costs of maintaining this action, including reasonable attorney's fees
10  hereafter incurred, be awarded to Plaintiff.

11      E.    Order such other and further relief as this Court may deem just and proper.

12  **SEVENTH CLAIM, VIOLATION OF THE FEDERAL REHABILITATION ACT**

13  57.    Plaintiff repeats each and every allegation in the paragraphs above as if they were
14  set forth in full in this Claim.

15  58.    Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, provides
16  that no otherwise qualified handicapped person "shall, solely by reason of his or her handicap, be
17  excluded from the participation in, be denied the benefits of, or be subjected to discrimination
18  under any program or activity receiving Federal Financial assistance. . . ."

19  59.    Plaintiff should be considered by Defendants as a handicapped person within the
20  meaning of Section 504 of the Rehabilitation Act. Plaintiff was and is qualified to receive
21  reasonable accommodations by reason of his disability.

22  60.    Defendants have violated Plaintiff's rights under the Rehabilitation Act by refusing
23  him reasonable accommodations, which would enable him to perform the functions of his
24  position, based solely upon his handicap status.

25  61.    As a direct and proximate result of Defendants' wrongful actions as described
26  above, Plaintiff has suffered damages in an amount to be proven at trial.

27  WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

28      A.    Order Defendants to make Plaintiff whole by providing him with appropriate lost

earnings and the cash value of employee benefits of which he has been deprived since his departure from employment, with pre-judgment interest.

B. Order Defendants to eradicate the effects of their unlawful employment practices, including but not limited to reinstating Plaintiff to the position which he previously held as a professor and restoring to him all of the privileges and benefits of his employment.

C. Order Defendants to make Plaintiff whole by providing compensation for his other pecuniary losses, including but not limited to cost incurred for health and life insurance premiums, and costs of seeking new employment, in amounts to be proven at trial hereof.

D. Order that the costs of maintaining this action, including reasonable attorney's fees hereafter incurred, be awarded to Plaintiff.

E. Order such other and further relief as this Court may deem just and proper.

## EIGHTH CLAIM, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

61. Plaintiff repeats each and every allegation in the paragraphs above as if they were set forth in full in this Claim.

62. Plaintiff's employment with Defendants was at all relevant times pursuant to a valid and enforceable contract.

63. Every contract under Nevada law carries an implied covenant of good faith and fair dealing.

64. In the employment context, Nevada law further requires a special relationship, such as one of trust and special reliance, to support a claim of breach of the implied covenant of good faith and fair dealing.

65. In the employment context, Nevada law further requires that the employer's conduct to go well beyond the bounds of ordinary liability for breach of contract, to support a claim of breach of the implied covenant of good faith and fair dealing.

66. A special relationship arose between Plaintiff and Defendant CCSN by virtue of their longstanding employer-employee relationship, as well as other factors.

67. The Defendants breached their covenant of good faith and fair dealing by

1  repeatedly failing and refusing to follow its own internal policies and procedures in their dealings
2  with Plaintiff, by consistently obstructing his professional development, by harassing him for
3  making use of his accrued sick leave, by treating him differently from another tenured professor
4  who was allowed to work half-time to accommodate a medical condition, by repeatedly refusing
5  to make reasonable accommodations for his disability, by engaging in retaliatory conduct for
6  Plaintiff's pursuit of grievances and by failing to honor their negotiated settlement agreement
7  related to Plaintiff's earlier discrimination grievance.

8  68.   The actions of Defendant CCSN as pled herein went far beyond ordinary breach of
9  contract, and damages available under contract theories would not make Plaintiff whole.

10 69.   As a direct and proximate result of Defendants' breach of their implied covenant of
11 good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial
12 hereof.

13 WHEREFORE, Plaintiff, HENRY C. AYOUB, prays that this Court:

14 A.   Order Defendants to make Plaintiff whole by providing him with appropriate lost
15 earnings and the cash value of employee benefits of which he has been deprived since his
16 departure from employment, with pre-judgment interest.

17 B.   Order Defendants to eradicate the effects of their unlawful employment practices,
18 including but not limited to reinstating Plaintiff to the position which he previously held as a
19 professor and restoring to him all of the privileges and benefits of his employment.

20 C.   Order Defendants to make Plaintiff whole by providing compensation for his other
21 pecuniary losses, including but not limited to cost incurred for health and life insurance premiums,
22 and costs of seeking new employment, in amounts to be proven at trial hereof.

23 D.   Order that the costs of maintaining this action, including reasonable attorney's fees
24 hereafter incurred, be awarded to Plaintiff.

25 E.   Order such other and further relief as this Court may deem just and proper.

26 . . .
27 . . .
28 . . .

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Dated this 10TH day of April, 2000.

*Dr. Henry C. Ayoub, DCH* (signature)
Dr. Henry C. Ayoub, DCH
1537 Tonada Way
Las Vegas, NV 89117
(702) 233-4200
*Plaintiff in Proper Person*